MACK BENNETT, PLAINTIFF v. NATIONAL SURETY CORPORATION, DEFENDANT.

(Filed 26 February 1964.)

**1. Pleadings § 12—**

　　A demurrer admits the facts properly pleaded but not the pleader's legal conclusions, and the sufficiency of the pleading must be determined on the basis of the facts alleged, liberally construed in favor of the pleader.

**2. Principal and Surety § 7—　　Surety is not liable for losses incident to employee's suit against employer for malicious prosecution.**

　　Allegations to the effect that an employer, pursuant to the provisions of the cooperation clause of the surety bond of his employees, signed at the instruction and direction of the surety a criminal warrant charging an employee with embezzlement, that the employer signed the warrant as a condition precedent to payment of his claim against the surety for shortage in the employee's funds and signed same as an agent of the surety, that the employee thereafter sued the employer for malicious prosecution and recovered settlement, and that the surety refused to aid in defending the suit for malicious prosecution, *held* insufficient to state a cause of action against the surety, there being no facts alleged disclosing that the signing of the criminal warrant was a condition precedent to the employer's right to recover on the bond

as a matter of law, and the allegation that the employer was acting as an agent of the surety being a mere conclusion.

APPEAL by plaintiff from *Bundy, J.,* October 1963 Session of CRAVEN. The hearing below was on demurrer to complaint.

Plaintiff's allegations are summarized or quoted in the following (our numbering) paragraphs.

1. Plaintiff owned and operated a laundry business. In March, 1952, defendant, a corporation, executed "a surety bond to indemnify the plaintiff against losses or shortages of funds belonging to the plaintiff and handled by the plaintiff's employees in the course of business." In August, 1952, plaintiff reported "certain losses or shortages of funds" covered under the terms of said bond. One loss or shortage reported by plaintiff and investigated by defendant "involved one James MacGray." MacGray "had terminated his employment relationship with the plaintiff during August of 1952 and left the State."

2. Defendant stated that plaintiff "would have to get a warrant" for MacGray and "get him back here." An attorney "was contacted" and defendant "instructed said attorney to draw a warrant" charging MacGray with "embezzlement." As a condition precedent to the payment of plaintiff's claim, defendant "instructed and directed" plaintiff to sign a criminal warrant charging MacGray with embezzlement; and, "as instructed and directed by the defendant," plaintiff, on or about October 14, 1952, signed such warrant. About six weeks later defendant located MacGray in Columbus, Ohio.

3. Defendant "caused extradition papers to be prepared for the sole purpose" of bringing MacGray to North Carolina to stand trial on the charge of embezzlement. When it was "determined" the first warrant "had been lost or misplaced," defendant called "the attorney" and requested him to come to the clerk's office and "draw another warrant." A second warrant charging MacGray with embezzlement "was prepared at the request of and in the presence of the defendant's agent on January 14, 1953," and plaintiff "was again instructed and directed by the defendant to sign the criminal warrant."

4. The bond provided that plaintiff "shall cooperate with the company in all matters pertaining to the loss or claim."

5. In March, 1953, "after warrants had been signed by the plaintiff at the direction of the defendant and extradition proceedings had been instituted, the defendant paid the plaintiff's claim in the amount of $840.39 to cover shortages in the account of James MacGray."

6. MacGray was extradited. The criminal case in which he was charged with embezzlement was calendared for trial in April of 1954. Defen-

dant "engaged attorneys to assist in the trial of the case" and requested plaintiff "to contact the attorneys for the purpose of providing them with any information they might need for the trial." When contacted by plaintiff, "the attorneys" told plaintiff "the defendant would not assist or take any part in the criminal action."

7. Upon trial of said criminal case, the court directed a verdict of not guilty. Thereafter, MacGray instituted a civil action against plaintiff to recover damages in the amount of $64,000.00 on account of alleged malicious prosecution. Plaintiff "requested assistance from the defendant on two occasions and each time the defendant refused to help the plaintiff . . ." At the first trial, the plaintiff (MacGray) was nonsuited. On appeal, the nonsuit was reversed. (See *Gray v. Bennett*, 250 N.C. 707, 110 S.E. 2d 324.) At the second trial, there was a verdict in favor of MacGray in the amount of $20,000.00. This was set aside by the trial judge. The case was calendared for (third) trial in October, 1962, at which time the case was settled by plaintiff's payment to MacGray of $3,500.00.

8. Plaintiff "would not have signed the criminal warrants charging . . . MacGray with embezzlement except at the specific request, direction and instruction by the defendant as a condition precedent to the payment of the plaintiff's claim under the surety (bond)."

9. As a direct and proximate result "of the defendant instructing and directing the plaintiff for and in behalf of the defendant to sign criminal warrants charging James MacGray with embezzlement, and by reason of the defendant thereafter abandoning and deserting the plaintiff in the criminal action for embezzlement and the civil action for malicious prosecution, the plaintiff was forced to employ counsel to defend the malicious prosecution suit instituted by the said James MacGray . . ."

10. Plaintiff has been damaged in the amount of $58,920.00, which includes (1) the $3,500.00 paid to him in settlement of the malicious prosecution suit, (2) $5,420.00 on account of "out of pocket expenses," and unspecified amounts for (a) mental anguish, (b) adverse publicity, (c) embarrassment, (d) loss of time, (e) impairment of health, etc.

11. ". . . at the time of the signing of the criminal warrants herein mentioned, the plaintiff was acting solely at the specific request, direction and instruction of the defendant *and as the agent of the defendant.*" (Our italics).

Defendant (for reasons specified therein) demurred on the ground the complaint did not allege facts sufficient to constitute a cause of action.

The court entered judgment sustaining the demurrer. Plaintiff excepted and appealed.

*Dunn & Dunn* for plaintiff appellant.
*Barden, Stith & McCotter* for defendant appellee.

BOBBITT, J.   The facts alleged, but not the pleader's legal conclusions, are deemed admitted when the sufficiency of a complaint is tested by a demurrer. Strong, N. C. Index, Pleadings § 12. The question is whether the *facts* alleged by plaintiff, liberally construed in his favor, are sufficient to constitute a cause of action.

Plaintiff's action is in tort. Even so, the rights and obligations of plaintiff and defendant *inter se* arise from and are determined by the contractual relationship subsisting between them. *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893.

Plaintiff did not attach to his complaint and incorporate therein by reference a copy of the bond. The only portion of the bond quoted in the complaint is a provision that plaintiff "shall cooperate with the company in all matters pertaining to the loss or claim." The only reasonable inference to be drawn from plaintiff's allegations is that defendant, under the terms of the bond, agreed to indemnify plaintiff, an employer, against financial loss caused by the dishonesty of an employee.

There is no allegation the criminal warrants signed by plaintiff on October 14, 1952, and on January 14, 1953, contained any false accusation. Plaintiff alleged defendant in March, 1953, paid plaintiff's claim "in the amount of $840.39 to cover shortages in the account of James MacGray." Presumably, the criminal warrants were based on the facts plaintiff asserted as the basis of his claim against defendant.

Plaintiff does not allege he was obligated by the terms of the bond to sign such criminal warrants as a condition precedent *to his right to recover* on the claim he was asserting against defendant. The provision with reference to plaintiff's cooperation "in all matters pertaining to the loss or claim," standing alone, falls far short of imposing an obligation that plaintiff sign criminal warrants. No reason appears why plaintiff could not have ignored defendant's alleged "specific request, direction and instruction" and brought suit against defendant to recover on account of the alleged MacGray shortage. Hence, we need not consider whether plaintiff would be in better position if, under the terms of the bond, he were obligated to sign such criminal warrants as a condition precedent to his right to recover on the claim he was asserting against defendant.

Allegations as to the failure of attorneys engaged by defendant to assist or take part in the criminal prosecution, and allegations as to the refusal of defendant to assist plaintiff in the defense of the malicious prosecution action, afford no basis for recovery. No facts are alleged from which it may be inferred that defendant was obligated to provide attor-

neys to assist in the prosecution of the criminal action or in the defense of the malicious prosecution action.

In one allegation (quoted in our preliminary statement) plaintiff asserted he signed the criminal warrants "as the agent of the defendant." The theory of recovery stressed in plaintiff's brief is predicated on the proposition that plaintiff was acting as agent for defendant. However, in view of plaintiff's allegations as to the actual relationship subsisting between him and defendant, the quoted allegation as to agency must be considered a legal conclusion rather than a factual allegation.

Typical of decisions cited and stressed by plaintiff are *Dickerson v. Refining Co.,* 201 N.C. 90, 159 S.E. 446; *Parrish v. Manufacturing Co.,* 211 N.C. 7, 188 S.E. 817; *D'Armour v. Hardware Co.,* 217 N.C. 568, 9 S.E. 2d 12. The gist of these decisions is stated in *Parrish* as follows: "It is elementary that the master is responsible for the tort of his servant which results in injury to another when the servant is acting by authority or within the scope of his employment and about the master's business. (Citation). Thus, where a servant, acting with authority or within the scope of his employment, wrongfully procures the arrest of a person, the master is liable in damages for such arrest and imprisonment."

The decisions cited by plaintiff are not in point. In the first place, no facts are alleged sufficient to support the legal conclusion that plaintiff was the agent of defendant. Apart from this, the cited decisions involve actions by the injured party against the alleged principal (or against both the alleged agent *and* the alleged principal) in which the plaintiff seeks to hold the principal liable for the alleged tortious acts of the agent. Plaintiff's allegations disclose that he was sole defendant in MacGray's action for malicious prosecution. No question is presented as to whether MacGray had a cause of action against the defendant herein.

Our conclusion is that the complaint does not allege facts sufficient to constitute a cause of action. Hence, the judgment sustaining the demurrer is affirmed.

Affirmed.